UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:03CV-705-H

MAURITA THOMAS, as next friend of
ESSENCE LEE                                                                                PLAINTIFF

V.

MANCHESTER TANK & EQUIPMENT
CORPORATION AND THERM-O-DISC, INC.                               DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This is a products liability action in which Plaintiff claims injury due to a defective or malfunctioning water heater and heat regulator.  Manchester Tank & Equipment Corporation ("Manchester") manufactured the water heater which contained a heat regulator manufactured by Therm-O-Disc, Inc. ("Therm-O-Disc").  The owners of the Paradise Mobile Home Park in Radcliffe, Kentucky, purchased and installed the water heater sometime in 1994.  In July,1999, Plaintiff, a three-year-old child, suffered second degree scald burns to her hands while at her home in the park.  The injuries occurred when her 13-year-old babysitter forcibly held the child's hands under hot water for some number of seconds.  This spare description of the facts suggests the difficulty of Plaintiff proving that her injuries were actually caused by some malfunction or defect in the water heater and its heat regulator, rather than by the acts of the babysitter. However, the Court does not attempt to resolve the pending motions on that basis.

On November 9, 2004, the parties submitted a proposed agreed litigation plan and discovery schedule which this Court adopted.  The litigation plan provided that Plaintiff should submit Rule 26 expert disclosures on or before December 1, 2004; that all discovery would be

completed by March 1, 2005, and that dispositive motions should be due by March 15, 2005. Both Defendants have now moved for summary judgment.

Plaintiff's claims of strict liability and products liability require evidence that either the water heater or the heat regulator failed to perform as intended, either because of the manufacturer's negligence or because of an unreasonably dangerous condition. Plaintiff has the burden to demonstrate that either the heater or the heat regulator is defective in its manufacture or design. *See Montgomery Elevator Co. v. McCullough*, 676 S.W.2d 197, 200 (Ky. 1984). This may be accomplished through circumstantial evidence if it is "sufficient to tilt the balance from possibility to probability" that the product in question contained a defect which caused injury to the plaintiff. *Morales v. American Honda Motor Co., Inc*., 151 F.3d 500, 507 (6th Cir.1998) (internal citations omitted); *Briner v. General Motors Corp.*, 461 S.W.2d 99 (Ky. 1971). Evidence amounting to "surmise or speculation" will not suffice. *Highway Transport Co. v. Daniel Baker Co.*, 398 S.W.2d 501, 502 (Ky. 1966) (citations omitted).

As explained in a treatise on Kentucky tort law, expert testimony is almost always required to meet this burden.

> As a general rule, expert witnesses are generally necessary, indeed essential, in products liability cases, as they are in medical malpractice actions, to prove such matters as a product defect and proximate causation, unless of course the nature of the defect and resultant injuries are so obvious as to fall within the general knowledge of the ordinary person.

William S. Haynes, *Kentucky Jurisprudence: Torts* §21-18 (1987); *Stevens v. Keller Ladders,* No. 99-6127, 2001 WL 45237, *4 (6th Cir. Jan. 12, 2001). This general rule exists because the complex or technical matters in many products liability cases are outside the knowledge of ordinary lay people. *See, e.g., Coffey v. Dowley Manufacturing, Inc.*, 187 F. Supp. 2d 958, 971-

2

72 (M.D. Tenn. 2002) (automotive tool was a complex product requiring expert testimony to prove defective design or manufacture); *Moisenko v. Volkswagenwerk Aktiengesellschaft*, 100 F. Supp. 2d 489, 492 (W.D. Mich. 2000) (expert testimony required to establish whether rear door latch on automobile was defective in releasing upon impact; question presented was not a matter of "simple physics" within the common knowledge of lay people).  This requirement strongly resembles, if not mirrors, the rule in medical malpractice law that while some cases present simple occurrences within the common knowledge of lay persons, others present complex matters requiring expert testimony for explanation. *Wheeler v. Baptist Healthcare System, Inc.*, No. 00-5518, 2001 WL 845500 at \*3 (6th Cir. July 16, 2001) (collecting examples of cases belonging to both categories).  In the latter category of cases, a jury will not be permitted to infer negligence and causation without expert testimony.

Normally, a jury cannot speculate that a product is defective simply because an unusual or  unexplained event has occurred.  A case from this district, *Enlow v. St. Jude Medical, Inc.*, is somewhat instructive.  327 F. Supp. 2d 738 (W.D. Ky. 2003).  There, a woman died soon after receiving a mechanical heart valve implant.  The administrator of her estate brought a products liability action against the manufacturer of the valve, claiming defective design and manufacture. The plaintiff in *Enlow* neither retained an expert nor identified any specific purported defect in the valve.  Nonetheless, the plaintiff claimed to have made out a case because the nature of the injury would permit only one logical inference: that a defective valve caused the woman's death. Specifically, the plaintiff argued for application of the doctrine *of res ipsa loquitur*, the particular form of circumstantial evidence allowing for only one logical inference in certain circumstances. Judge Charles Simpson held that the plaintiff had insufficient evidence to support a jury verdict.

The nature of the woman's death would permit a number of logical inferences, so the principle of *res ipsa loquitur* could not apply.  With no other evidence, the plaintiff's case could not survive summary judgment.  In conducting analysis in *Enlow*, Judge Simpson quoted language from another case that aptly summarized the plaintiff's deficient proof:

> Although the jury may draw reasonable inferences from the evidence of a defect in manufacturing, it is incumbent on the plaintiff to introduce evidence that will support a reasonable inference that the defect was the 'probable' cause of the [injury] as distinguished from a 'possible' cause among other possibilities; otherwise the jury verdict is based upon speculation or surmise . . . There must be sufficient proof to tilt the balance from possibility to probability . . . Thus, defendants invariably receive a judgment in their [favor] as a matter of law in Kentucky where plaintiffs are unable to isolate one cause, either by direct evidence, or, more relevant to the present case, by eliminating other possible causes.

*Id.* at 741 (quoting *Gray v. General Motors Corp.*, 133 F. Supp. 2d 530, 534 (E.D. Ky. 2001)(quoting *Midwestern V.W. Corp. v. Ringley*, 503 S.W.2d 745 (Ky.1973); *Beverly Hills Fire Litigation*, 695 F.2d 207, 219 (6th Cir.1982))).

The Court applies the foregoing principles here.  The record reveals that Plaintiff has not submitted an appropriate Rule 26 disclosure for expert testimony that identifies any defect or malfunction in either the water heater or its heat regulator.  The only purported expert testimony that Plaintiff has tendered appears to be a one page letter from Todd S. Baldwin submitted on February 3, 2005.[1]  The letter itself contains the results of a water temperature test that Mr. Baldwin conducted at Plaintiff's home.  The results show that when the hot water heater was set at 120 degrees temperature, it produced water at about 145 degrees.  Assuming the jury believes these test results, it will have no reason to understand them without further explanation.  The

---

[1] It turns out not to be particularly significant that the purported expert disclosure was filed two months late. The Court will consider the dispositive motion as if Mr. Baldwin's testimony were allowed.

internal mechanisms of a water heater are not within the common knowledge of the ordinary lay person.  Neither Mr. Baldwin, nor anyone else, offers the necessary explanation of these mechanisms.  He does not propose to testify as to why a heater set at 120 degrees produces water at 145 degrees.  He does not propose to testify that either the water heater or the heat regulator was defectively designed or defectively manufactured.  Nor does he propose to provide testimony that would eliminate other possible theories as to why the heater would have functioned in this way.

Based on this evidence the jury is left to speculate whether the product even malfunctioned, whether such malfunction was attributable to a defect, whether someone altered the product, whether the product was improperly maintained, or any number of other theories, including the possibility that a combination of unusual circumstances caused the water to momentarily spike in temperature.  What actually occurred is left unexplained and to the jury's imagination.  Plaintiff's evidence is simply insufficient to tilt the balance from possibility to probability that her injury resulted from a defect in either Defendant's product.  Consequently, Plaintiff's claim must be dismissed.[2]

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the motions for summary judgment of Manchester Tank & Equipment Corp. and of Therm-O-Disc, Inc. are SUSTAINED and Plaintiff's claims are

---

[2] Plaintiff also contends that Defendants failed to adequately warn or instruct about their products.  The circumstances here are not those normally found in a failure to warn cases.  The water heater was owned, installed, operated and maintained by the mobile home park operator.  Plaintiff's family did not operate the water heater.  Therefore, they would not see any proposed warning.  Plaintiff argues that Defendants should have warned of the danger of setting the water heater above 125°.  This argument fails because the water heater was not set above that temperature.  Thus the absence of any such warning did not cause Plaintiff's injury.  Plaintiff's other argument, that Defendants failed to adequately instruct users on the proper mounting of the thermostat, fails because Plaintiff's expert offers no evidence that an improperly mounted thermostat caused an elevated water temperature.  For all these reasons, Plaintiff does not assert a claim for a defective product by virtue of an inadequate warning.

DISMISSED WITH PREJUDICE.

This is a final and appealable order.

cc:     Counsel of Record